IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Wiley Y. Daniel

Civil Action No. 05-cv-00575-WYD-BNB

GERALD DESKINS,

     Applicant,

v.

CARL ZENON, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER OF DISMISSAL

---

Applicant Gerald Deskins is a prisoner in the custody of the Colorado Department of Corrections at the Fort Lyon, Colorado, Correctional Facility. Mr. Deskins has filed a *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 challenging his State of Colorado conviction and sentence. On April 18, 2005, I ordered Respondents to answer the Application, which they did on May 13, 2005. Mr. Deskins elected not to file a traverse to Respondents' Answer.

I must construe liberally Mr. Deskins' Application and the Brief in Support because he is a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, I should not act as a *pro se* litigant's advocate. *See Hall*, 935 F.2d at 1110. After reviewing the entire file, I find that an evidentiary hearing is not necessary. For the reasons stated below, the Application will be denied.

I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Deskins was convicted in the Garfield County District Court on April 14, 1993, of three counts of child abuse resulting in death, three counts of vehicular homicide, two counts of vehicular assault, one count of child abuse resulting in serious bodily harm, one count of driving under the influence, and five habitual criminal counts. *See People of the State of Colorado v. Deskins*, No. 92CR135, Judgment and Mittimus at 493-94 (April 14, 1993). He was sentenced to five consecutive-life- sentences and four concurrent-life-sentences plus a one-year sentence in the county jail to run concurrent with his state sentence. *Id.*

The Colorado Court of Appeals reversed and remanded the judgment of conviction, *see People of the State of Colorado v. Deskins*, 904 P.2d 1358 (Colo. App. 1995), finding that the district court did not adequately advise Applicant of his right to testify and that the waiver of the right cannot be considered voluntary, knowing, and intentional. The state court of appeals, however, also found (1) that there was sufficient evidence to support the child abuse convictions because Colo. Rev. Stat. §§ 18-6-401(7)(a)(1) and 18-6-401(7)(a)(III) impose criminal liability if a person acts recklessly and the conduct injures or kills a child or children, (2) that the collateral attack statute, Colo. Rev. Stat. § 16-5-402, is constitutional, and (3) that sufficient evidence supported two of the four habitual criminal counts, but that the convictions cannot stand, and a new trial is required.

A petition for writ of certiorari was granted. The Colorado Supreme Court, on November 15, 1996, affirmed in part finding that Applicant was properly convicted of

child abuse charges and reversed in part finding that Applicant knowingly, voluntarily, and intentionally waived his right to testify. *Deskins v. People of the State of Colorado*, 927 P.2d 368 (Colo. 1996). The Colorado Supreme Court remanded the case to the state court of appeals to address appellate issues which it did not reach in the earlier opinion. *Id.*

On remand, the Colorado Court of Appeals found no error in the trial court's denial of Applicant's motion for change of venue, no error in the trial court's denial of Applicant's challenges for cause of eleven jurors, who either served or were prospective jurors, and no abuse of discretion by the trial court in sentencing Applicant to five consecutive-life-terms. *People v. Deskins*, No. 93CA0750 (Colo. App. Jan. 16, 1997) (Not selected for publication). The state court of appeals did remand to the trial court the habitual criminal adjudication in four of Applicant's prior convictions. The trial court was instructed to address the issue of whether Applicant could demonstrate the existence of justifiable excuse or excusable neglect under Colo. Rev. Stat. § 16-5-402(2)(d) resulting in a finding that he was not time-barred under § 16-5-402(1) and was able to challenge his prior convictions. *Id.* The state court of appeals found, however, that the judgment and sentences imposed stand affirmed, subject only to Applicant's right to appeal the trial court's ruling on remand. *Id.*

Applicant then filed a petition for writ of certiorari in which he challenged the state court of appeals' finding. The petition for a writ was denied on September 22, 1997. *Deskins v. People of the State of Colorado*, No. 97SC250 (Colo. Sept. 22, 1997) (Not selected for publication).

On remand to the trial court, Applicant abandoned all attacks on prior convictions except for one. The trial court held that Applicant failed to show justifiable excuse or excusable neglect for not challenging his prior conviction and that he was time-barred by § 16-5-402(1). Applicant appealed the trial court's denial, and the court of appeals affirmed the denial on March 2, 2000. *People of the State of Colorado v. Deskins*, No. 98CA1804 (Colo. App. Mar. 2, 2000) (Not selected for publication). The court of appeals determined that Applicant sought only to challenge his prior 1960 Kansas conviction and found that Applicant failed to demonstrate a justifiable excuse or excusable neglect and was time-barred from collaterally attacking the conviction. *Id.* at 5. The Colorado Supreme Court denied a writ in the appeal on July 24, 2000. *Deskins v. People of the State of Colorado*, No. 00SC330 (Colo. July 24, 2000) (Not selected for publication).

Mr. Deskins then filed a Colo. R. Crim. P. 35(c) postconviction motion asserting ineffective assistance of counsel. The trial court denied the motion and Applicant appealed. In the appeal, Mr. Deskins claimed that he received ineffective assistance of counsel because the public defender failed to (1) request sequestration of the witnesses until after seven of the state witnesses had testified and (2) utilize the assistance of expert witnesses at trial, including an expert witness with respect to the accident reconstruction and another expert witness with respect to the effects of alcohol and drugs on the human body.

Applicant also asserted in the Rule 35(c) motion that (1) the appellate public defender failed to appear and argue Applicant's motion for a bond pending appeal, (2)

4

the substitute counsel who did appear at the bond hearing was Applicant's trial counsel and only had thirty minutes to prepare, and (3) the motion for bond was filed after the court of appeals entered an order finding that the trial court had provided an inadequate *Curtis* advisement, that Applicant's waiver of his right to testify was invalid and there was insufficient evidence to support two of the six habitual counts.

The Colorado Court of Appeals denied the Rule 35(c) motion finding that Applicant failed to sustain his burden of showing actual prejudice because (1) defense counsel's decision not to utilize expert witnesses was strategic and supported by reasonable professional judgment, (2) the failure to request a sequestering of witnesses until after several prosecution witnesses had testified did not prejudice Applicant, and (3) Applicant failed to explain how his appellate counsel would have been more proficient in representing him at the bond hearing. *People of the State of Colorado v. Deskins*, No. 02CA1755 (Colo. App. Apr. 8, 2004) (Not selected for publication). On September 20, 2004, the Colorado Supreme Court denied Applicant's petition for writ of certiorari. *Deskins v. People of State of Colorado*, No. 04SC301 (Colo. Sept. 20, 2004) (Not selected for publication).

Mr. Deskins asserts the following five claims for relief in the instant action and asserts that the claims were raised and exhausted in state court proceedings:

> 1.    Applicant's Sixth Amendment right to a fair trial was violated when the trial court denied his motion for change of venue.
>
> 2.    Applicant's Fifth, Sixth, and Fourteenth Amendment rights were violated when the trial court refused to excuse jurors for cause even though there was a

5

showing of prejudice.

3.   Trial counsel was ineffective when he failed to (a) challenge Applicant's arrest, the use of contaminated blood, and a broken chain of custody, (b) request sequestration of witnesses, and (c) obtain assistance of expert witnesses.  Appellate counsel was ineffective when he failed to appear at Applicant's hearing on a bond pending appeal and that substitute counsel was unprepared.

4.   Applicant's due process rights were violated when the trial court denied him the ability to challenge his prior convictions and found that Applicant failed to show excusable and justifiable excuse for allowing a challenge to the prior convictions.

5.   There was insufficient evidence to prove the child abuse charges and the child abuse convictions coupled with the vehicular homicide convictions violate the Double Jeopardy Clause.

Respondents concede that the instant action is timely.  *See* 28 U.S.C. § 2244(d).

## II.  EXHAUSTION OF STATE REMEDIES

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.  "The exhaustion

6

requirement is not one to be overlooked lightly." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).  A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies.  *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

Respondents argue that Mr. Deskins has not exhausted state remedies for his ineffective assistance of counsel claim regarding trial counsel's failure to challenge his arrest and the subsequent admission of his blood testing results.  Mr. Deskins has failed to reply to Respondents' answer.

My review of the briefs that Mr. Deskins filed in the state court postconviction proceedings reveals he did not present to any state court his ineffective assistance of counsel claim regarding counsel's failure to challenge his arrest and the blood tests. As a general rule, federal courts "do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice." *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998).  Application of this procedural default rule in the habeas corpus context is based on comity and federalism concerns.  *See Coleman v. Thompson*, 501 U.S. 722, 730 (1991).  Mr. Deskins' *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice.  *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

Mr. Deskins does not attempt in the Application to show cause and prejudice or a fundamental miscarriage of justice for his procedural default of the ineffective

7

assistance of counsel claim regarding his arrest and blood test.  He also has failed to

respond to Respondents' Answer which set forth the procedural bar rule and his

obligation to assert cause and prejudice or a fundamental miscarriage of judgment with

respect to this claim.  Therefore, I find that the ineffective assistance claim as it

pertains to Applicant's arrest and blood test is procedurally barred.

III.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United
> States; or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant

to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).

The threshold question pursuant to § 2254(d)(1) is whether Mr. Deskins seeks to apply

a rule of law that was clearly established by the Supreme Court at the time his

conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000) (Stevens, J.,

writing for the Court).  Clearly established federal law "refers to the holdings, as

opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant

state-court decision." *Id.* at 412 (O'Connor, J., writing for the Court).  If a clearly

established rule of federal law is implicated, I must determine whether the state court's

decision was contrary to or an unreasonable application of that clearly established rule

of federal law.  *See id.* at 404-05.

The "contrary to" clause allows a writ of habeas corpus to issue "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

of law or if the state court decides a case differently than [the Supreme] Court has on a

set of materially indistinguishable facts." *Id.* at 413.  The "unreasonable application"

clause allows a writ of habeas corpus to issue "if the state court identifies the correct

governing legal principle from [the Supreme] Court's decisions but unreasonably

applies that principle to the facts of the prisoner's case." *Id.*  My inquiry pursuant to the

"unreasonable application" clause is an objective inquiry.  *See id.* at 409-10.  "[A]

federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable." *Id.* at 411.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See*

*Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Pursuant to

§ 2254(e)(1), I must presume that the state court's factual determinations are correct

and Mr. Deskins bears the burden of rebutting the presumption by clear and convincing

evidence.

I "owe deference to the state court's *result*, even if its reasoning is not expressly

stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must

uphold the state court's summary decision unless [my] independent review of the

record and pertinent federal law persuades [me] that its result contravenes or

unreasonably applies clearly established federal law, or is based on an unreasonable

determination of the facts in light of the evidence presented." *Id.* at 1178.  "[T]his

'independent review' should be distinguished from a full de novo review of the

petitioner's claims." *Id.*

IV.  MERITS OF THE CLAIMS

    A.  Change of Venue

    Mr. Deskins claims that his Sixth Amendment right to a fair trial was violated

when the trial court denied his motion for change of venue.  (Application at 5.)

Applicant contends that his state criminal case was subject to a large amount of pretrial

publicity and that all of the jury pool had heard or seen extensive coverage of the

details of the case through the media, including that Applicant had prior convictions for

drinking and driving and that he was intoxicated at the time of the accident.

(Application at 5.)  He further argues that the jurors had predetermined that he was

guilty.

(Application at 5.)

    Respondents counter Applicant's claim by arguing that in this particular case

both the trial court and the court of appeals used the applicable standards of review as

found in *Sheppard v. Maxwell*, 384 U.S. 333 (1966), and in *Irvin v. Dowd*, 366 U.S. 717

(1961), to examine the evidence of the media publicity and the results of the jury

selection process and to determine that a change of venue was unwarranted.  (Answer at 15.)

In addressing Applicant's change of venue claim, the Colorado Court of Appeals found that:

> To prevail on a claim of reversible error in denying a motion to change venue based upon pre-trial publicity, a defendant must show that the publicity was so "massive, pervasive, and prejudicial as to create a presumption that he was denied a fair trial, or alternatively, that the publicity created actual prejudice or hostility towards the defendant on the part of the jury panel."  *People v. Bartowsheski*, 661 P.2d 235, 240 (Colo. 1983).

> The mere existence of extensive publicity does not trigger a due process entitlement to a change of venue. Only in rare circumstances is the publicity so massive, pervasive, and prejudicial that the prejudice can be presumed.  *People v. Lindsey*, 805 P.2d 1134 (Colo. App. 1990), *rev'd in part on other grounds*, *People v. Milton*, 864 P.2d 1097 (Colo. 1993).

> The determination whether to grant a motion for change of venue rests within the discretion of the trial court.  Crim. P. 21(a)(1); *People v. Simmons*, 183 Colo. 253, 516 P.2d 117 (1973).

In ruling on defendant's motion, the trial court determined that:

> [U]nder the circumstances . . . it's appropriate to deny the motion.  I am not satisfied it is unreasonable to expect we can get a fair and impartial jury in Garfield County.  I think we need to try.  I will deny the motion, and you can renew it as the circumstances may support.  I will ask the jury commissioner to increase the jury call, and we will have individual voir dire of jurors with regard to pretrial publicity.

Defense counsel renewed defendant's motion for change of venue during voir dire and, in his motion for new trial, asserted the trial court's denial of the motion as error.

Attached to defendant's motion for change of venue was the affidavit of an investigator who stated that he was "personally aware of the high degree of coverage the case . . . has derived in the local papers as well as other newspapers which are read by the local community." Attached to the affidavit and presented as samples of the

pre-trial publicity were four newspaper articles related to the collision.

The investigator testified at the January 1993 hearing on defendant's motion concerning a telephone survey he had conducted between December 24, 1992, and January 4, 1993.  The investigator testified that he surveyed approximately seventy-five people from the county in which the trial was held, Garfield County, and that 92% of those called stated, after having been given a brief recitation of the facts, that they were familiar with defendant's case. And, although the investigator testified that 55% of those called indicated that they had formed an opinion about defendant's guilt, he testified that he had not inquired during the survey as to whether each respondent believed defendant was guilty or innocent.

Our examination of the sampling of the published newspaper reports submitted with defendant's motion satisfies us that the publicity surrounding this case was not so massive, pervasive, and prejudicial as to create a presumption that defendant could not be accorded a fair trial in Garfield County.  *See People v. Bartowsheski*, *supra*. The volume of the newspaper accounts was not inordinate and the longest of the accounts did not emphasize defendant's criminal history or the circumstances surrounding the collision but, rather, focused on the response to the collision of the father and spouse of four of the victims.  And, the remaining articles were not detailed but instead, merely "outlined the basic facts related to the reporter."  *People v. Bartowsheski*, *supra*, 661 P.2d at 240.

12

> Nor do we conclude that the publicity created actual prejudice or hostility on the part of the jury panel towards the defendant.  We note that when the trial court denied defendant's motion, it kept open the question of the impact of the publicity and permitted defendant to revisit that issue at length during voir dire.
>
> Accordingly, we perceive no error in the trial court's denial of defendant's motion.

*Deskins*, No. 93CA0750 at 2-4.

The United States Supreme Court has found presumed prejudice based on pretrial publicity in *Rideau v. Louisiana,* 373 U.S. 723 (1963), *Estes v. Texas,* 381 U.S. 532 (1965), and *Sheppard*.  In *Rideau*, the Court found widespread community exposure of the defendant and his crime and the locally repeated televised confession that it was not necessary to reach a jury selection stage to conclude that a change of venue was necessary.  *Rideau*, 373 U.S. at 726.  In *Estes*, the Court reversed a conviction where the jury pool was first exposed to extensive televised pretrial publicity, which was then followed by a circus-like atmosphere at trial due to television cameras in the courtroom.  *Estes*, 381 U.S. at 535-36.  In *Sheppard*, the Supreme Court reversed the conviction of an Ohio doctor for the murder of his wife after finding his trial was corrupted by "the massive, pervasive and prejudicial publicity that attended [the defendant's] prosecution."  *Sheppard*, 384 U.S. at 335.  In *Sheppard*, the Court found that both the publicity itself and the trial judge's failure to insulate the defendant from the impact of the publicity amounted to presumed prejudice.

Cases where courts presume prejudice based on pretrial publicity are rare.  Applicant bears the burden of establishing that prejudice should be presumed.  *See*

13

*Stafford v. Saffle*, 34 F.3d 1557, 1566 (10th Cir. 1994) (citing *United States v. Abello-Silva*, 948 F.2d 1168, 1176 (10th Cir. 1991)).

The United States Court of Appeals for the Tenth Circuit has held that prejudice will only be presumed where "the influence of the news media, either in the community at large or in the courtroom itself, pervaded the proceedings," *Hale v. Gibson*, 227 F.3d 1298, 1332 (10th Cir. 2000) (quoting *Murphy v. Florida*, 421 U.S. 794, 799 (1975)) (internal quotations omitted)), and publicity "created either a circus atmosphere in the court room or a lynch mob mentality such that it would be impossible to receive a fair trial," *Hale*, 227 F.3d at 1332 (citing *Sheppard*, 384 U.S. 333). "Simply showing that all the potential jurors knew about the case and that there was extensive pretrial publicity will not suffice to demonstrate that an irrepressibly hostile attitude pervaded the community." *Id.*

In his Brief in Support of Application, Mr. Deskins asserts that at the hearing on the motion to change venue an investigator from the Public Defender's Office testified he had collected a sample of articles that had been published in local newspapers. (Brief Supporting Application at 6.)  Applicant further asserts that the articles included comments about (1) his release from a jail sentence for a DUI at the time of the accident, (2) his blood alcohol content being .221, which he alleges was untrue, (3) the suffering of the father whose children had died due to the accident, (4) Applicant's suspended license due to prior DUI convictions, (5) Applicant's outstanding warrant for writing bad checks, and (6) the injuries that were sustained by individuals involved in the accident.  (Brief at 6.)  Applicant also contends that the investigator testified he was

14

personally aware of the high degree of coverage of Applicant's criminal case and that one reporter told him that she had written twelve to twenty articles on the case and was aware of numerous editorials written about the case.  (Brief at 6.)

The Colorado Court of Appeals reviewed the articles and found that the volume of the newspaper accounts was not inordinate and that the longest of the accounts did not emphasize defendant's criminal history or the circumstances surrounding the collision but, rather, focused on the response to the collision.  *Deskin*, No. 93CA0750 at 2-4.  The Colorado Court of Appeals also determined that the mere existence of extensive publicity does not trigger a due process entitlement to a change of venue.  *Id.* Although the Colorado Court of Appeals only refers to state cases for the basis of its findings, the holdings in each of the state cases that the court of appeals relied upon are in keeping with federal findings of when there is presumed prejudice and a change of venue is necessary.

In *Hale,* the Tenth Circuit found that:

> Prior to Hale's trial, the news coverage of Perry's abduction and murder, as well as the arrest and indictment and federal prosecution, was considerable.  The newspaper accounts revealed details of the murder, kidnapping, ransom demand, and Hale's arrest and arraignment on federal charges, and further detailed the cost to the county associated with escorting Hale to court by federal marshals. The articles included pictures of Hale and of the crime scene where Perry's body was eventually found.  The paper also reported the impact on the community and the Perry family. One article discussed the fact that Hale had previous dealings with the bank in which he owed money, and also discussed related civil and criminal charges against Hale. The newspapers also reported the incident involving Brenda Allison, who claimed that Hale had told her that her husband

15

was hurt in a car accident and offered her a ride just a day prior to Perry's abduction. When Perry was found guilty on the federal extortion charges, there were more articles in the newspaper. Several papers also reported the testimony of witnesses in the federal extortion case.

*Hale*, 227 F.3d at 1331. The Tenth Circuit, in *Hale*, also went on to find no pretrial prejudice since the news articles were written over a five-month period and the largest volume of the articles were dated several months prior to defendant's trial. *Id.* at 1333.

In review of the articles, that were presented by the investigator on November 24, 1992, I find that the articles discuss Applicant's past police record, the police report of the accident, actions and comments by county officials regarding Applicant's release from jail prior to the accident, and comments by the father of the deceased children. (*Deskins*, No. 92CR135, Mot. Change Venue, pp. 88-94 (Vol. No. I, Colo. App. No. 02CA1755). To the extent that the deceased children's father referred to Applicant as "vermin slime" in one of the articles the statement does not indicate that an irrepressibly hostile attitude pervaded the community. *Id.* Furthermore, the article was printed no more than two weeks after the August 25, 1992, accident, which was just less than six months prior to February 24, 1993, when voir dire was conducted to empanel a jury. *Id.*

To the extent that the other newspaper articles Applicant has attached to the Brief in Support of Application address Applicant's criminal case, either the articles were published immediately after the accident or after voir dire began. The comments included in the editorial that Applicant "deserves the death penalty" or "99 years and one dark day in prison," (Brief Supporting Application at Exs.), are statements included

16

in two separate letters to the editor and do not provide evidence that an irrepressibly hostile attitude pervaded the community as a whole.

Applicant also contends that the investigator for the Public Defender's Office conducted a random survey of seventy-five persons in the Garfield County area.  He asserts that as a result of the survey the investigator found that 92% of those contacted were aware of the accident, 55% said they had formed an opinion, 72% said they had discussed the case with other people, and 41% stated they believed that Applicant could not receive a fair trial in Garfield County.  (Brief Supporting Application at 7.) Nonetheless, upon review of the motion to change venue hearing, held in the state district court on January 14, 1993, I find that the investigator admitted that he did not ask the people who had said they had formed an opinion if they had decided whether Applicant was guilty or not guilty.  *Deskins*, No. 92CR135, Mot. Change Venue, p. 117 (Vol. No. XIV, Colo. App. No. 02CA1755).  I, therefore, find that the results of the survey fail to show that he was prejudiced by the publicity.

Applicant also asserts that the voir dire proceeding showed actual prejudice based on the responses of actual and potential jurors.  Mr. Deskins states that approximately seventy people were examined during the voir dire process and that fifty challenges for cause were granted and fourteen denied.  (Brief at 8-9.)  He further asserts that fifty of the prospective jurors in varying degrees had heard about his case primarily through the newspaper or electronic media.  (Brief at 8.)  He also states that seven of the twelve jurors heard about the case and at least three jurors commented that the case was subject to extensive pretrial publicity.  (Brief at 9.)  He contends that

17

one juror noted that the details "were quite vivid on the television and in the

newspaper," that another juror stated that "[i]t was in all the papers all over the state

and T.V. and no way could you miss it," and that there was a lot of discussion in his

community and letters to the editor.  (Brief at 10.)

Citing to *Irvin v. Dowd*, 366 U.S. 717 (1961), Mr. Deskins contends that the

likelihood he would be prejudiced is automatically greater because his case was tried in

a small community, he was incarcerated for a DUI just before the accident occurred,

and a number of the jurors presumed his guilt.  (Brief at 10.)

The Sixth Amendment as incorporated by the Fourteenth Amendment

guarantees the right of a trial by jury in all state criminal cases.  *Duncan v. Louisiana*,

391 U.S. 145, 149 (1968).  The Fourteenth Amendment requires that any empaneled

jury in a state case must be impartial.  *Irvin*, 366 U.S. 717.  In *Irvin*, the findings were as

follows:

> Here the build-up of prejudice is clear and convincing.  An
> examination of the then current community pattern of
> thought as indicated by the popular news media is singularly
> revealing.  For example, petitioner's first motion for a
> change of venue from Gibson County alleged that the
> awaited trial of petitioner had become the cause ce le bre of
> this small community-so much so that curbstone opinions,
> not only as to petitioner's guilt but even as to what
> punishment he should receive, were solicited and recorded
> on the public streets by a roving reporter, and later were
> broadcast over the local stations.  A reading of the 46
> exhibits which petitioner attached to his motion indicates
> that a barrage of newspaper headlines, articles, cartoons
> and pictures was unleashed against him during the six or
> seven months preceding his trial.  The motion further
> alleged that the newspapers in which the stories appeared
> were delivered regularly to approximately 95% of the

dwellings in Gibson County and that, in addition, the Evansville radio and TV stations, which likewise blanketed that county, also carried extensive newscasts covering the same incidents.  These stories revealed the details of his background, including a reference to crimes committed when a juvenile, his convictions for arson almost 20 years previously, for burglary and by a court-martial on AWOL charges during the war.  He was accused of being a parole violator.  The headlines announced his police line-up identification, that he faced a lie detector test, had been placed at the scene of the crime and that the six murders were solved but petitioner refused to confess.  Finally, they announced his confession to the six murders and the fact of his indictment for four of them in Indiana.  They reported petitioner's offer to plead guilty if promised a 99-year sentence, but also the determination, on the other hand, of the prosecutor to secure the death penalty, and that petitioner had confessed to 24 burglaries (the modus operandi of these robberies was compared to that of the murders and the similarity noted).  One story dramatically relayed the promise of a sheriff to devote his life to securing petitioner's execution by the State of Kentucky, where petitioner is alleged to have committed one of the six murders, if Indiana failed to do so.  Another characterized petitioner as remorseless and without conscience but also as having been found sane by a court-appointed panel of doctors.  In many of the stories petitioner was described as the 'confessed slayer of six,' a parole violator and fraudulent-check artist.  Petitioner's court-appointed counsel was quoted as having received 'much criticism over being Irvin's counsel' and it was pointed out, by way of excusing the attorney, that he would be subject to disbarment should he refuse to represent Irvin.  On the day before the trial the newspapers carried the story that Irvin had orally admitted the murder of Kerr (the victim in this case) as well as 'the robbery-murder of Mrs. Mary Holland; the murder of Mrs. Wilhelmina Sailer in Posey County, and the slaughter of three members of the Duncan family in Henderson County, Ky.'

It cannot be gainsaid that the force of this continued adverse publicity caused a sustained excitement and fostered a strong prejudice among the people of Gibson County.  In

fact, on the second day devoted to the selection of the jury, the newspapers reported that 'strong feelings, often bitter and angry, rumbled to the surface,' and that 'the extent to which the multiple murders-three in one family-have aroused feelings throughout the area was emphasized Friday when 27 of the 35 prospective jurors questioned were excused for holding biased pretrial opinions . . . .'  A few days later the feeling was described as 'a pattern of deep and bitter prejudice against the former pipe-fitter.'  Spectator comments, as printed by the newspapers, were 'my mind is made up'; 'I think he is guilty'; and 'he should be hanged.'

Finally, and with remarkable understatement, the headlines reported that 'impartial jurors are hard to find.'  The panel consisted of 430 persons.  The court itself excused 268 of those on challenges for cause as having fixed opinions as to the guilt of petitioner; 103 were excused because of conscientious objection to the imposition of the death penalty; 20, the maximum allowed, were peremptorily challenged by petitioner and 10 by the State; 12 persons and two alternates were selected as jurors and the rest were excused on personal grounds, e.g., deafness, doctor's orders, etc.  An examination of the 2,783-page voir dire record shows that 370 prospective jurors or almost 90% of those examined on the point (10 members of the panel were never asked whether or not they had any opinion) entertained some opinion as to guilt-ranging in intensity from mere suspicion to absolute certainty.  A number admitted that, if they were in the accused's place in the dock and he in theirs on the jury with their opinions, they would not want him on a jury.

*Irvin*, 366 U.S. at 725-27.

Three U.S. Supreme Court cases have clarified *Irvin* with respect to claims of a biased jury pool.  In *Murphy*, the Court rejected a presumed prejudice because only twenty of the seventy-eight potential jurors were excused for cause due to an opinion of the defendant's guilt and the pretrial publicity was for the most part factual and published several months prior to the trial.  *Murphy*, 421 U.S. 802-03.  Similarly, in

*Patton v. Yount*, 467 U.S. 1025 (1984), the Court determined that even where (1) pretrial publicity revealed inadmissible information including a prior conviction for murder and a confession, (2) seventy-seven percent of the potential jurors admitted their opinion of the defendant's guilt would continue into the jury box, and (3) eight of the fourteen jurors and alternates who were seated admitted that they had formed an opinion at some time regarding the defendant's guilt, "the voir dire testimony and the record of publicity did not reveal the kind of 'wave of public passion' that would have made a fair trial unlikely by the jury that was empaneled as a whole." *Patton*, 467 U.S. at 1029-30 and 1040. Furthermore, in *Mu'Min v. Virginia*, 500 U.S. 415 (1991), the Court disregarded the claims of exposure to media coverage even where eight of twelve seated jurors had read or heard something about the case prior to trial.

A state trial court's finding regarding the impartiality of jurors is a question of fact. *Patton*, 467 U.S. at 1036-37, n.12. Only when a manifest error occurs can a federal habeas court overturn a state court's finding regarding jury impartiality as a whole. *Id.* at 1031. The standard also applies to any questions about the impact of pretrial publicity on the jury pool. *Goss v. Nelson*, 439 F.3d 621, 627 (10th Cir. 2006) (citing *Patton*, 467 U.S. at 1031).

Potential jurors are not expected to be totally ignorant, however, of the facts surrounding a case. *Goss*, 439 F.3d at 627. If a prospective juror can lay aside preconceived opinions regarding the outcome of a case and "render a verdict based on the evidence presented in the court," they are found to be sufficiently impartial. *Id.* (quoting *Irvin*, 366 U.S. at 723) (internal quotations omitted).

21

To determine whether Applicant was subject to actual prejudice a court must examine the totality of the circumstances.  *Stafford*, 34 F.3d at 1567.  "Due process requires that the accused receive a fair trial by an impartial jury free from outside influences."  *Abello-Silva*, 948 F.2d at 1177 (overruled on other grounds) (quoting *Sheppard*, 384 U.S. at 362) (internal quotations omitted).  "The trial court has broad discretion in gauging the effects of prejudicial publicity and in taking measures to insure a fair trial."  *Id.* (internal quotations omitted).  "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard."  *Hale*, 227 F.3d at 1333 (quoting *Irvin*, 366 U.S. at 722-23).  "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented
in court."  *Id.*

Specifically, Applicant claims that juror Fowler testified during voir dire, in response to defense counsel's questioning, she had formed an opinion that Applicant had been drinking, that he caused the accident, that he killed the children, that anyone who had read the newspaper articles would have formed the same opinion, that she could not forget what she read, and that Applicant was guilty.  (Brief at 9.)  Applicant contends that despite his challenge for cause to disqualify Ms. Fowler the court sat her on the jury.

Mr. Deskins also states that juror Phemister should have been excused for cause because he worked for social services, he worked on cases that involved sexual

22

assaults on children, and he worked closely with the Garfield County district attorney and all the police involved with Applicant's case.  (Brief at 9.)  Applicant further states that when he was in jail pending his trial he attempted to find his children, and Mr. Phemister, due to his position with social services, was involved in the search for his children.  (Brief at 9.)  Mr. Deskins contends that Mr. Phemister like many others wanted to "hang [him] so bad" that he stated what the court wanted to hear just to be sat on the jury.  (Brief at 9.)  Applicant also states that Mr. Phemister was the jury foreman.  (Brief at 9.)

Applicant further asserts that juror Huber was an alcoholic herself who had strong emotional feelings about the crime and cried at some point about the case. (Brief at 9.)  Finally, Mr. Deskins states that another showing that a motion for change of venue should have been granted is the voir dire of juror O'Neill.  (Brief at 9.)

Upon review of the trial court's transcript, I find that during voir dire Ms. Fowler was asked by the state court judge presiding in the case whether she had made a decision about what are or are not the facts of the case, and she responded that she had not made a decision.  *Deskins*, No. 92CR135, Transcript, 286 (Vol. No. V, Colo. App. No. 02CA1755).  She also stated that she had served on a jury previously, that she was amazed at how free of opinion she could be when evidence is presented and she has to deliberate as a juror, and that as a juror she would have to look at evidence differently than when she is reading an article in a newspaper.  *Id.* at 287.  Ms. Fowler also stated that she did not know the details, that the information she read was pretty sketchy, and that it was possible for her to set aside what she had read and heard and

23

to "look at it through new eyes," in that she had been required to do that when she

participated on a jury previously. *Id.* at 293. She also was asked whether she held an

opinion as to Applicant's guilt, to which she responded that she did not. *Id.* at 286. Ms.

Fowler also stated that the newspaper articles she had read about the case were at the

time the accident happened and that she had not read any articles since that time. *Id.*

at 285.

With respect to the voir dire of Ms. Fowler and whether the responses given by

Ms. Fowler indicate that a motion for change of venue was justified, I find that

Applicant's arguments are without basis. Although the Colorado Court of Appeals did

not refer to *Irvin*, *Murphy*, *Patton*, or *Mu'Min*, the court based its findings on the same

legal premise as found in each of these four cases.

As for the voir dire of juror Phemister, I find that Mr. Phemister stated that the

child abuse he deals with is largely familial involving ongoing child abuse and that he

did not believe his work would bias his decision making. *Id.* at 300. He also stated that

he had worked with the prosecutor's office, including the prosecutor involved in

Applicant's criminal case, on a child sex abuse case. *Id.* at 305. Applicant's counsel

sought a challenge for cause based partly on Mr. Phemister's prior relationship with the

district attorney's office. *Id.* at 306. The court denied the challenge finding that Mr.

Phemister understood the presumption of innocence, that his work in child protection

services is distinguishable from the theory of prosecution with regard to child abuse in

Applicant's case, that he is not a police officer within the definition applicable for

challenges for cause, and that the relationship he has had with the district attorney's

24

office in sharing information and cooperation in the prosecution of child abuse cases is

of a totally different nature.  *Id.* at 307.  The court stated that Mr. Phemister appears to

honestly, fully, and completely appreciate the responsibilities of being a juror.  *Id.* at

306-07.

Contrary to Applicant's claim that Mr. Phemister was involved in an investigation

to locate Applicant's children while Applicant was in jail, Mr. Phemister informed the

court that he was not involved with the matters relating to Applicant's children other

than receiving the letter.  *Id.* at 332.  He further stated that if he was selected for the

jury he would instruct his staff not to discuss with him the matter of Applicant's children.

*Id.*  He also stated that there was nothing about the letter that would cause him to

change any of the answers he had given previously regarding his qualifications.  *Id.*

The court again found Mr. Phemister qualified.  With respect to the voir dire of Mr.

Phemister and whether the responses given by Mr. Phemister indicate that a motion for

change of venue was justified, I find that Applicant's arguments are without basis.

Applicant's questioning of the denial of the challenge for cause of juror Huber to

support his claim that the trial court erred in not granting his request for change of

venue also is without basis.  Although Ms. Huber did state she was a recovering

alcoholic, that she has small children, and that when the charges against Applicant

were read in court she became emotional, the court determined that cause should be

denied because during voir dire she demonstrated her ability to be open and unbiased,

she claimed minimum prior knowledge of the case, and expressed no opinion as to

Applicant's guilt or lack of guilt.  *Id.* at 314-25.  With respect to the voir dire of Ms.

25

Huber and whether the responses given by Ms. Huber indicate that a motion for change of venue was justified, I find that Applicant's arguments are without basis.  Although the Colorado Court of Appeals did not refer to *Irvin*, *Murphy*, *Patton*, or *Mu'Min*, the court based its findings on the same legal premise as found in each of these four cases.

As for juror O'Neill, the trial court found that even though he stated he had formed an opinion based on what he had read in the newspaper at the time the car accident took place, the court found that based on his responses he could be fair and impartial.  *Id.* at 350.  The court further found that even though Mr. O'Neill used the word "opinion" it is not in and of itself sufficient to describe his state of mind.  *Id.*  The court found that what matters is the level of the opinion and the capacity of Mr. O'Neill to deal with any previously held opinion.  *Id.*  Again, I find that with respect to the voir dire of Mr. O'Neill and whether the responses given by Mr. O'Neill indicate that a motion for change of venue was justified, Applicant's arguments are without basis. Although the Colorado Court of Appeals did not refer to *Irvin*, *Murphy*, *Patton*, or *Mu'Min*, the court based its findings on the same legal premise as found in each of these four cases.

Furthermore, I find that Applicant fails to set forth any evidence that overcomes the Colorado Court of Appeals' determination that juror bias is best observed at the trial court level.  The court of appeals found that the trial court conducted an extensive *in camera* voir dire, found a healthy scepticism by potential jurors about the accuracy of media accounts, and was able to rehabilitate each prospective juror.

The facts in this case do not rise to the level of *Rideau*, *Sheppard*, or *Estes*.  A

jury's exposure to a "defendant's prior convictions or to news accounts of the crime with

which he is charged," does not alone demonstrate a denial of due process. *Murphy*,

421 U.S. at 799.  I further find that Applicant fails to show a presumption of pretrial

prejudice based on the newspaper articles that were published regarding his

involvement with the car accident, his prior convictions, and the circumstances

regarding his release at the time of the accident.  Applicant fails to provide evidence

that as a whole the community was so hostile a proper jury could not be empaneled.  I,

therefore, find that the Colorado Court of Appeals' decision regarding the denial of

Applicant's motion for a change of venue was not contrary to or an unreasonable

application of a clearly established rule of federal law or an unreasonable

determination of the facts in light of the evidence presented in the trial court

proceeding.

B.  Challenges for Cause

Mr. Deskins claims that the state trial court erred in denying his challenges for

cause of five actual jurors and six prospective jurors in violation of his Sixth and

Fourteenth Amendment rights.  (Brief at 10.)  Mr. Deskins asserts that the jurors either

(1) read or heard of the car accident that he was charged with causing, (2) knew that

there was alcohol and drugs involved, (3) knew that small children were killed, and (4)

knew that he had been in jail for a previous DUI conviction.  (Brief at 10-15.)  Applicant

further asserts that because the local community was exposed to extensive pretrial

publicity the impartiality of the eleven jurors is inconclusive and suspect.  (Brief at 16.)

He further contends that the exposure of a juror to information about a defendant's

27

criminal past is usually grounds for reversal or mistrial.  (Brief at 16.)

Mr. Deskins contends that he exercised all of his peremptory challenges in an attempt to remove each of the jurors for whom the trial court had refused to grant a challenge for cause and that he made repeated requests for additional peremptory challenges, which the trial court denied.  (Brief at 16.)  He also contends that when there is a doubt as to a prospective juror's ability to be fair the trial court abuses its discretion by failing to grant a challenge for cause and that a juror who attempts to rehabilitate by stating "I guess," "I think," or "possibly" fails to achieve rehabilitation. (Brief at 16-17.)

In the Answer, Respondents argue that under the U.S. Constitution, a defendant only is able to complain about jurors who actually sat on the jury, citing to *Ross v. Oklahoma*, 487 U.S. 81, 85-86 (1988).  (Answer at 16.)  Respondents further argue that Applicant's complaints about Cooper, Hayes, Fowler, Huber, O'Neill, and Arbaney, therefore, are "moot."  (Answer at 16.)  Respondents also contend that Applicant raised the challenge for cause claim in his direct appeal, mentioned *Irvin*, but otherwise based his arguments on state law.  (Answer at 16.)  Respondents, therefore, conclude that the challenge for cause claim is unexhausted and subject to the procedural bar rule. (Answer at 16.)  Nonetheless, to the extent Applicant's single mention of *Irvin* exhausted the claim, Respondents argue that the record shows no constitutional violation.  (Answer at 16.)

With respect to Applicant's claim that the voir dire proceeding showed actual prejudice based on the responses of actual and potential jurors, the Colorado Court of

Appeals found as follows:

Although a prospective juror may have formed some impression about the merits of a case in advance of trial, if the court is satisfied, from an examination of the prospective juror or from other evidence, that the juror will render an impartial verdict according to the evidence admitted at trial and the court's instructions of law, then the court may permit the juror to serve.  Section 16-10-103(1)(j), C.R.S. (1986 Repl. Vol. 8A); *People v. Gurule*, 628 P.2d 99 (Colo. 1981).

The factors of credibility and appearance, which are determinative of juror bias, are best observed at the trial court level, and therefore, the grant or denial of a challenge for cause is within the discretion of the trial court, *Nailor v. People*, 200 Colo. 30, 612 P.2d 79 (1980), and its ruling will not be disturbed on appeal absent a gross abuse of that discretion.  *People v. Arevalo*, 725 P.2d 41 (Colo. App. 1986).

The entire voir dire examination of the potential juror must be reviewed to determine whether the juror would render a fair and impartial verdict based on the evidence presented at trial and the instructions given by the court. *People v. Abbott*, 690 P.2d 1263 (Colo. 1984) . . . .

Here, during extensive *in camera* voir dire examination of each of the [ ] challenged jurors, the court and counsel questioned each of them thoroughly to ensure that those selected would be able to render an impartial verdict. . . . [E]ach of the prospective jurors indicated a willingness to set aside any information gleaned from media accounts of the case, to suspend any judgment based thereon, to decide the case solely on the basis of the evidence presented, and to follow the court's instructions and give full effect to the presumption of innocence.

And, although many of the prospective jurors acknowledged that they had previously read or heard about the case, nearly all the prospective jurors exhibited what the trial court termed a "healthy skepticism" about the accuracy of media accounts or otherwise demonstrated an ability to distinguish the content of the accounts from the evidence to be presented at trial.

> We conclude, therefore, that each of the prospective
> jurors was rehabilitated and that the trial court did not err in
> denying defendant's challenges for cause.

*Deskins*, No. 93CA0750 at 5-6.

As stated above, under *Patton*, determining the impartiality of particular jurors by a state trial court is a question of fact. "There are good reasons to apply the statutory presumption of correctness to the trial court's resolution of these questions." *Patton* 467 U.S. at 1038. First, the court's determination of impartiality is made usually only after extended voir dire proceedings and the determination is one of credibility and largely of demeanor. *Id.* Therefore, the question is whether there is fair support in the record of the state court's finding that jurors would be impartial. *Id.* As stated above, only if a manifest error is found can a federal court overturn the state court's findings of impartiality. *Id.*, at 1031.

Simply because Applicant sought to use his peremptory challenges when his challenges for cause were denied does not establish that actual jurors or prospective jurors were biased or prejudicial. Peremptory challenges are not of constitutional dimension. *Ross*, 487 U.S. at 88. "They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Id.* (citing *Hopt v. Utah*, 120 U.S. 430, 436 (1887); *Spies v. Illinois*, 123 U.S. 131 (1887)).

I have reviewed with great detail the transcripts of the voir dire proceedings for each of the actual and potential jurors for whom Applicant claims the state trial court

erred in denying the challenges for cause and have found as follows.

      1.  Juror Phemister

I addressed above the voir dire of juror Phemister.  I found that with respect to the voir dire of Mr. Phemister, and whether the responses given by Mr. Phemister indicate that a motion for change of venue was justified, Applicant's arguments are without basis.

In addition to the allegations Applicant raised in Claim One regarding the voir dire of Mr. Phemister, Applicant contends, in Claim Two, that Mr. Phemister wanted to participate on the jury so that he could "hang the person that killed three children." (Brief Supporting Application at 12.)  He further asserts that Mr. Phemister stated he had heard a number of news accounts about the case, that he admitted he would have to overcome biases that may be present, that he had formed opinions about Applicant's guilt, that he had discussed the case with family, friends, and co-workers, and that he recalled that Applicant had a history of problems.  (Brief Supporting Application at 12.)

Upon review of the transcript I find that Mr. Phemister, in response to the question by the trial court about whether he had formed any opinions about the case, stated, "Well, I have read the newspaper accounts, and it's hard not to.  It's hard for the mind not to do that.  I consider in this process that once trial starts, you know, a person has to start from scratch, ignore everything else and take what they hear in the trial." *Deskins*, No. 92CR135, Transcript, 297-98 (Vol. No. V, Colo. App. No. 02CA1755).  Mr. Phemister also stated that he had talked about the case at work and that he probably expressed an opinion that the "gentleman had a history of problems in this area . . . ."

31

*Id.* at 298.  In response to the question as to whether he had an opinion as to

Applicant's guilt he stated, "[T]he newspaper accounts were pretty blaming, but I

understand newspapers and what those are about.  I certainly don't believe everything I

read in the newspapers."  *Id.* at 298-99.  Mr. Phemister further stated that he

understood the presumption of innocence, that it was every juror's duty to start as

though they knew nothing, to listen to the evidence presented, and that he was able to

do this.  *Id.* at 299-300.  Mr. Phemister also stated that the dynamics of the particular

case were extremely different from the kind of child abuse that he works with in his job,

because the case involves vehicular assault and not family relationships.  *Id.* at 300.

Mr. Phemister further stated that he felt he was in a neutral state of mind.  *Id.* at 302.

The state trial court thoroughly examined Mr. Phemister's employment and his

work with child abuse cases.  I find that the state trial court was not required to excuse

Mr. Phemister simply because of his employment.  *United States v. McCullah*, 76 F.3d

1087, 1100 (10th Cir. 1996).  Based on Mr. Phemister's responses to the questions

asked of him during voir dire, I find fair support in the record of the state court's finding

that he would be impartial.  I further find no manifest error that would merit overturning

the state court's ruling of impartiality.  Therefore, the Colorado Court of Appeals'

decision regarding Applicant's challenge for cause of juror Phemister is not contrary to

or an unreasonable application of clearly established federal law.  The state court's

rejection of Applicant's challenge for cause claim with respect to Mr. Phemister also did

not result in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the state trial court proceeding.

2.  Juror Ferguson

Applicant contends that juror Ferguson had read about the case in the

newspapers and heard about it on the radio, including that Applicant had been

released after a previous DUI and was drinking and on drugs at the time of the

accident, yet he stated he "THOUGHT" he could be a fair juror.  (Brief Supporting

Application at 12.) Applicant asserts that the state court denied his challenge for cause

of juror Ferguson, and because he had exhausted all of his peremptory challenges Mr.

Ferguson was seated on the jury.

Upon review of the transcript, I find that, in response to the state trial court's

questions, Mr. Ferguson stated that he had not made any decision about Applicant's

guilt or lack of guilt.  *Deskins*, No. 92CR135, Transcript, 8 (Vol. No. VII, Colo. App. No.

02CA1755).  He also stated that a person is "sort of" influenced by newspapers, radios,

and reports, but that he understands that there is a certain degree of latitude and that

not all media reports are factual, so he did not form any impression about Applicant and

the prosecution.  *Id.*  at 9.  Mr. Ferguson also stated that he did not have knowledge of

all of the facts of the case and that he would have to listen to what was presented in the

case.  *Id.* at 11.  Furthermore, Mr. Ferguson stated that he had not formed an opinion

about the case and did not remember who caused the accident, but he did remember

that Applicant was on release from jail, had prior DUI's, and that he may have talked

about the case in passing to his friends.  *Id.* at 12-14.

The trial court found that Mr. Ferguson was able to give full effect to the

presumption of innocence and remain open-minded about whatever he had read in the

newspaper or otherwise heard.  *Id.* at 16.  Based on Mr. Ferguson's responses to the

questions asked of him during voir dire, I find fair support in the record of the state

court's finding that he would be impartial.  I further find no manifest error that would

merit overturning the state court's ruling of impartiality.

Therefore, the Colorado Court of Appeals' decision regarding Applicant's

challenge for cause of juror Ferguson is not contrary to or an unreasonable application

of clearly established federal law.  The state court's rejection of Applicant's challenge

for cause claim with respect to Mr. Ferguson also did not result in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented

in the state trial court proceeding.

### 3.  Juror McDaniel

Applicant asserts that juror McDaniel stated that he had read reports that Mr.

Deskins was at fault and that he should have been in jail at the time of the accident.

(Brief Supporting Application at 13.)  Applicant also contends that Mr. McDaniel stated

that he had formed some opinion that Applicant was at fault but that he could be fair

and an impartial juror.  (Brief Supporting Application at 13.)

Upon review of the transcript, I find that Mr. McDaniel stated that he had read

about the accident in the newspaper and saw a little about it on television.  *Deskins*,

No. 92CR135, Transcript, 623 (Vol. No. VI, Colo. App. No. 02CA1755).  He further

asserted that he had talked with other people casually about the accident, that he knew

children were killed and others were sent to the hospital.  *Id.* at 623 and 625.  He also

remembered that Applicant was believed to be at fault for the accident, that alcohol was

34

involved, and that Applicant should have been in jail at the time the accident happened. *Id.* at 627-28. Mr. McDaniel also states that he does not have any opinion as to Applicant's guilt or lack of guilt, that he believes he could be open-minded and reserve judgment until he has heard all of the facts, that not necessarily everything you read in the newspaper is true, and that he would be able to set whatever he had heard or read aside and listen only to the facts that are presented in court. *Id.* at 624-26. The trial court judge found that Mr. McDaniel demonstrated a sufficient willingness and ability to be fair and open-minded, to be nonjudgmental, and to be able to disregard matters pertaining to what he had heard. *Id.* at 629.

Based on Mr. McDaniel's responses to the questions asked of him during voir dire, I find fair support in the record of the state court's finding that he would be impartial. I further find no manifest error that would merit overturning the state court's ruling of impartiality.

Therefore, the Colorado Court of Appeals' decision regarding Applicant's challenge for cause of juror McDaniel is not contrary to or an unreasonable application of clearly established federal law. The state court's rejection of Applicant's challenge for cause claim with respect to Mr. McDaniel also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state trial court proceeding.

4. Prospective Juror Cooper

Applicant asserts that juror Cooper stated that she had read newspapers about the case and knew some details about it, that she had not made up her mind about the

35

case, but that she had some strong feelings.  (Brief Supporting Application at 13.)
Applicant further alleges that when she was asked whether she would be fair-minded
she replied, "I don't know.  Possibly.  Yes, I suppose I would."  (Brief Supporting
Application at 13.)  Mr. Deskins also states that Ms. Cooper recalled reading that
Applicant had been on release from jail at the time of the accident and that he had
some other problems previously.  (Brief Supporting Application at 13.)

Upon review of the transcript, I find that Ms. Cooper's response as to whether
she could be fair-minded was not a concern about what she had read about the
accident and Mr. Deskins, but that she had just begun teaching a first grade class in an
emergency situation and wanted to be sure the children would have only one substitute
teacher until the end of the school year.  *Deskins*, No. 92CR135, Transcript, 647 and
652 (Vol. No. VI, Colo. App. No. 02CA1755).  Ms. Cooper also stated that she had not
made up her mind about the facts of the case, she had not decided whether Applicant
was guilty, that she would be willing to reserve judgment until all of the evidence was
presented, that she is honest and fair-minded, that serving as a juror is important and
needed, that the school district had options to address her concerns about the first
grade class she was to teach until the end of the year, and that she could set aside her
apprehension about being away from the new teaching position for a few more days.
*Id.* at 647-53.

The trial court found that Ms. Cooper was able to demonstrate an ability to
suspend judgment and decide the case on the facts and that most of her hesitancy was
associated with her work and not with the publicity associated with the case.  *Id.* at 656.

36

Even though Applicant utilized one of his peremptory challenges, and Ms. Cooper did not serve as a juror, I find fair support in the record of the state court's finding that she would be impartial.  I further find no manifest error that would merit overturning the state court's ruling of impartiality.

Therefore, the Colorado Court of Appeals' decision regarding Applicant's challenge for cause of juror Cooper is not contrary to or an unreasonable application of clearly established federal law.  The state court's rejection of Applicant's challenge for cause claim with respect to Ms. Cooper also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state trial court proceeding.

5.  Juror Melton

Mr. Deskins asserts that juror Melton indicated that he had read about the case in the papers, that Applicant was at fault and alcohol was involved, that at the time of the accident Applicant was out of jail for knee surgery, and that he stated he, however, could be fair and disregard the newspaper accounts.  (Brief Supporting Application at 13.)

Upon review of the transcript, I find that during voir dire Mr. Melton stated that he did not have any specific recollection of the articles concerning the particulars of the accident.  *Deskins*, No. 92CR135, Transcript, 539 (Vol. No. VI, Colo. App. No. 02CA1755).  Mr. Melton further stated that he believed a person is not guilty until proven guilty, that he had not formed an opinion as to Applicant's guilt, that he felt he could give Applicant the presumption of innocence, and that each point has to be

evaluated and weighed.  *Id.* at 539-41.  Furthermore, in response to questions by the prosecution, Mr. Melton stated that he had participated in jury deliberation previously, and if chosen in Applicant's case he would attempt to persuade other jurors to look at the facts and to not let emotions be an issue.  *Id.* at 542.

Also in response to questions asked by Applicant's counsel, Mr. Melton stated he had read in the newspaper about the accident, in which Applicant was involved, and he remembered the articles stated that three children were killed in the accident, that Applicant was at fault and was drinking, and that he was out of jail for knee surgery.  *Id.* 544-46.  Nonetheless, Mr. Melton also stated that what he reads in the newspaper and what is presented at trial are entirely different.  *Id.* at 546.

The trial court judge denied Applicant's challenge for cause because he found that Mr. Melton responded in such a way as to indicate the he was open-minded, that he was prepared to decide the case entirely on the evidence, and that he would not let other factors influence him.  *Id.* at 549.  I find fair support in the record of the state court's finding that Mr. Melton would be impartial.  I further find no manifest error that would merit overturning the state court's ruling of impartiality.

Therefore, the Colorado Court of Appeals' decision regarding Applicant's challenge for cause of juror Melton is not contrary to or an unreasonable application of clearly established federal law.  The state court's rejection of Applicant's challenge for cause claim with respect to Mr. Melton also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state trial court proceeding.

6.  Prospective Juror Hays

Applicant asserts prospective juror Hays stated that the father of the two deceased children had been her therapist years before.  (Brief Supporting Application at 14.)  Applicant further asserts Ms. Hays stated that she felt the case was difficult and admitted that she had heard about the case before the trial.  (Brief Supporting Application at 14.)  Applicant also asserts Ms. Hays stated that her parents were alcoholics and that her brother-in-law had been killed in a car accident.  (Brief Supporting Application at 14.)  Applicant further asserts Ms. Hays stated that she had no opinion and could be fair but was unable to say that she was sure she could do so. (Brief Supporting Application at 14.)

Upon review of the transcript, I find that although Ms. Hays states she has a father who is an alcoholic and had a brother killed in a car accident, she does state that she would do the best she could to set aside those issues in determining Applicant's guilt.  *Deskins*, No. 92CR135, Transcript, 114 (Vol. No. IV, Colo. App. No. 02CA1755). She also stated that the case was a tough one for both the victims and the defendant, that she wished she could find a reason not to be a juror, but that she did not have doubts about the case not being a good case for her.  *Id.* at 113.  Ms. Hays further stated that the father of the children who were killed provided treatment to her for an injured knee "years ago," and that she had not seen him or his wife "in years."  *Id.* at 111.  Ms. Hays also stated that she had not read the articles about Applicant, that her husband told her about the accident, but that the judge provided the most details to her about the accident when he read the information about the case to the jurors.

39

During voir dire, Applicant's attorney motioned for a challenge for cause of Ms. Hays. *Id.* at 115. He based the challenge in part on an implied bias claiming that Ms. Hays was one of those people who had a combination of disabilities that made her unfit as a juror. *Id.* Applicant's attorney stated that Ms. Hays had alcohol in her family, knew the victims, and had some information about the accident. *Id.*

The implied or presumed bias concept "arises from situations in which the circumstances point so sharply to bias in a particular juror that even [her] own denials must be discounted." *Gonzales v. Thomas,* 99 F.3d 978, 987 (10th Cir. 1996) (citation omitted). "Thus, implied bias may be found even though a juror denies any partiality." *Id.* Nonetheless, the implied bias concept is "reserved for those 'extreme' and 'exceptional' circumstances that 'leav[e] serious question whether the trial court . . . subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice.' " *Id.* (citing *Smith v. Phillips*, 455 U.S. 209, 222, & n.* (1982)). "Something more than an unverified conjecture is necessary to justify the grant of a new trial where only potentially suspicious circumstances are shown." *United States v. Bradshaw,* 787 F.2d 1385, 1390 (10th Cir. 1986) (citing *United States v. Barber*, 668 F.2d 778, 787 (4th cir.), *cert. denied*, 459 U.S. 829 (1982)); *see also United States v. Easter,* 981 F.2d 1549, 1553 (10th Cir. 1992) ("Absent evidence to the contrary, we presume that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court.") (citing *United States v. Greschner*, 802 F.2d 373, 381 (10th Cir. 1986), *cert denied*, 480 U.S. 908 (1987)).

Applicant offers nothing more than mere conjectures that Ms. Hays was biased

against him.  Upon review of the transcript of Ms. Hays' voir dire, I do not find a serious question as to whether the trial court subjected Applicant to manifestly unjust procedures resulting in a miscarriage of justice when the court denied Applicant's challenge for cause of Ms. Hays.  Even though Applicant utilized one of his peremptory challenges, and Ms. Hays did not serve as a juror, I find fair support in the record of the state court's finding that she would be impartial.  I further find no manifest error that would merit overturning the state court's ruling of impartiality.

Therefore, the Colorado Court of Appeals' decision regarding Applicant's challenge for cause of juror Hays is not contrary to or an unreasonable application of clearly established federal law.  The state court's rejection of Applicant's challenge for cause claim with respect to Ms. Hays also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state trial court proceeding.

### 7.  Prospective Juror Fowler

I addressed above the voir dire of juror Fowler.  I found that with respect to the voir dire of Ms. Fowler, and whether the responses given by Ms. Fowler indicate that a motion for change of venue was justified, Applicant's arguments are without basis.

In addition to the allegations Applicant raised in Claim One regarding the voir dire of Ms. Fowler, he asserts, in Claim Two, that prospective juror Fowler stated that she was an avid reader, that she had read articles about the case, that the newspaper left her thinking that Applicant was at fault, and that she was disturbed when she learned that Applicant was out of jail on another DUI conviction at the time of the

41

accident.  (Brief Supporting Application at 14.)  Applicant further asserts that Ms.

Fowler also indicated that she did not hold an opinion as to Applicant's guilt and could

fairly review the evidence.  (Brief Supporting Application at 14.)

Upon review of the transcript, I find that Ms. Fowler stated she read newspaper

articles about the accident at the time the accident occurred, but she did not recall

reading any articles since that time.  *Deskins*, No. 92CR135, Transcript, 285 (Vol. No.

V, Colo. App. No. 02CA1755).  Ms. Fowler also stated, in response to the trial court's

question about whether she was at point zero given what she had read, heard, and

talked about, that she felt with confidence she was at point zero, that she had served

on another trial a little over a year ago, that she had read a lot of information about the

previous case in the paper, but that she was amazed at how "free of opinion" she was

after hearing the evidence and in deliberation.  *Id.* at 286-87.  She further stated that

when a person is a juror they have to look at things differently, be nonjudgmental, and

build a conclusion just on what goes on in the courtroom.  *Id.* at 287.  Ms. Fowler did

agree with Applicant's attorney that she probably formed an opinion as to Applicant's

guilt at the time the accident happened and based on conversations she had with other

people, but she also stated that it is possible to set aside what she had heard or read.

*Id.* at 293.

The trial court determined that a challenge for cause was not well-grounded

specifically because Ms. Fowler stated that she had served on a jury before and had

been able to disengage herself from things that she had heard before the case.  *Id.* at

294.  Even though Applicant utilized one of his peremptory challenges, and Ms. Fowler

did not serve as a juror, I find fair support in the record of the state court's finding that she would be impartial. I further find no manifest error that would merit overturning the state court's ruling of impartiality.

Therefore, the Colorado Court of Appeals' decision regarding Applicant's challenge for cause of juror Fowler is not contrary to or an unreasonable application of clearly established federal law. The state court's rejection of Applicant's challenge for cause claim with respect to Ms. Fowler also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state trial court proceeding.

### 8. Prospective Juror Huber

I also addressed the voir dire of juror Huber above in Claim One. I found that with respect to the voir dire of Ms. Huber and whether the responses given by Ms. Huber indicate that a motion for change of venue was justified, Applicant's arguments are without basis.

In addition to the allegations Applicant raised in Claim One regarding the voir dire of Ms. Huber, he asserts, in Claim Two, that prospective juror Huber acknowledged that she had heard of a newspaper account of the accident, that it hit "an emotional cord" with her because children were killed and because drug or alcohol was involved. (Brief Supporting Application at 14.) He further asserts that Ms. Huber stated that she was a recovering addict and alcoholic and that when she heard the charges against Applicant some of the feeling she had when she first heard of the accident returned to her almost reducing her to tears. (Brief Supporting Application at 14.)

Upon review of the transcript, I find that Ms. Huber stated that she did not have an opinion as to what are or are not the facts of the case, that she had not formed an opinion as to Applicant's guilt, and that she believed she was at point zero regarding the presumption of innocence. *Deskins*, No. 92CR135, Transcript, 315 (Vol. No. V, Colo. App. No. 02CA1755). Ms. Huber further stated that her emotional responses regarding the involvement of children and the fact that she is a recovering addict would not cloud her ability to listen to the facts of the case and to make a decision. *Id.* at 318. Ms. Huber also stated that she had not read about the accident in the newspaper, that the only things she had heard were that there was an accident involving children who were killed, that others were injured, that there was alcohol or drugs involved, and that when she talked with her husband about the accident no sentiments were expressed regarding the fact that a mother and children were involved. *Id.* at 319.

Ms. Huber also stated in response to questions asked by Applicant's counsel during voir dire that she had not judged Applicant as a person and that she could set aside her emotions regarding the involvement of children and her past addictions and alcoholism if she was chosen to serve as a juror. *Id.* at 324. Ms. Huber also stated that at the time she heard of the accident she even questioned whether there was other reasons for the cause of the accident. *Id.* at 320. She further stated that she recalled times when she drove a car while she was under the influence. *Id.* at 323.

The trial court determined that a challenge for cause lacked basis because Ms. Huber had minimum prior knowledge of the case, she had not expressed opinions about the guilt or lack of guilt of Applicant, and she stated that when she first heard of

44

the accident she thought there could be other reasons for the cause of the accident. *Id.* at 325. Even though Applicant utilized one of his peremptory challenges, and Ms. Huber did not serve as a juror, I find fair support in the record of the state court's finding that she would be impartial. I further find no manifest error that would merit overturning the state court's ruling of impartiality.

Therefore, the Colorado Court of Appeals' decision regarding Applicant's challenge for cause of juror Huber is not contrary to or an unreasonable application of clearly established federal law. The state court's rejection of Applicant's challenge for cause claim with respect to Ms. Huber also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state trial court proceeding.

### 9. Prospective Juror O'Neill

I also addressed the voir dire of juror O'Neill above in Claim One. I found that with respect to the voir dire of Mr. O'Neill, and whether the responses given by Mr. O'Neill indicate that a motion for change of venue was justified, Applicant's arguments are without basis.

In addition to the allegations Applicant raised in Claim One regarding the voir dire of Mr. O'Neill, he asserts, in Claim Two, that Mr. O'Neill stated that he had read about the case in the newspaper, including an article that indicated Applicant was drunk at the time of the accident and had a previous DUI. (Brief Supporting Application at 15.) Mr. Deskins also asserts that Mr. O'Neill stated he was partially biased by the newspaper accounts and believed that Applicant was guilty.

Upon review of the transcript, I find that Mr. O'Neill stated that he had read the newspaper articles about the accident at the time the accident happened, that he had not formed an opinion about whether Applicant was guilty or not guilty, that he had not talked with other people regarding the accident, and that he would be able to assess the case based solely on the evidence that would be provided during the trial. *Deskins*, No. 92CR135, Transcript, 41-43 (Vol. No. V, Colo. App. No. 02CA1755). Also in response to questions asked by Applicant's counsel, Mr. O'Neill stated that he would be able to set aside any prior opinion that he had and to look at only the material that is presented in court. *Id.* at 348. He further stated that he would be able to do this because he could compartmentalize what he had heard previously about the accident from what would be presented at the trial. *Id.*

The trial court determined that a challenge for cause lacked basis because even though Mr. O'Neill provided some mixed responses he, as a whole, exhibited a capacity to be fair and impartial. *Id.* at 350. The trial court further determined that Mr. O'Neill's use of the word "opinion" in describing his state of mind at the time of the accident is not in and of itself sufficient to find he is not fair and impartial, but what is at issue is how Mr. O'Neill is able to deal with his prior opinions. *Id.*

Even though Applicant utilized one of his peremptory challenges and Mr. O'Neill did not serve as a juror, I find fair support in the record of the state court's finding that he would be impartial. I further find no manifest error that would merit overturning the state court's ruling of impartiality.

Therefore, the Colorado Court of Appeals' decision regarding Applicant's

46

challenge for cause of juror McNeill is not contrary to or an unreasonable application of clearly established federal law.  The state court's rejection of Applicant's challenge for cause claim with respect to Mr. McNeill also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state trial court proceeding.

   10. Prospective Juror Arbaney

  Mr. Deskins asserts prospective juror Arbaney indicated during the initial questioning that she would have a problem being fair, that she disliked the use of alcohol, and that this could influence her opinion.  (Brief Supporting Application at 15.) Applicant further asserts that Ms. Arbaney said that she had read about the case in the newspaper and understood that Applicant was drunk at the time of the accident.  (Brief Supporting Application at 15.)

  With respect to Ms. Arbaney's comments about drinking, the trial court explained to her that the question is not whether she has a concern about drinking, but whether Applicant did the things with which he is charged with doing.  *Deskins*, No. 92CR135, Transcript, 28 (Vol. No. IV, Colo. App. No. 02CA1755).  The trial court also explained that people may also be against vehicular homicide, but the question is whether there is something about the nature of the charges that has a special significance that would so cloud a juror's mind that he or she could not fairly and honestly listen to all of the evidence and make a determination as to whether the juror is satisfied beyond a reasonable doubt that the defendant committed the crimes with which he was charged. *Id.* at 28-29.

47

The trial court gave examples of such kind of circumstances including having been a victim of the same kind of crime, having a close friend be a victim of the same kind of crime, or being personally involved in the same kind of circumstance either directly or with a relative. *Id.* In response to the trial court's question as to whether any of the above examples applied to her she responded by saying "No." *Id.* at 29.

Upon further review of Ms. Arbaney's voir dire, I find that once the judge provided the above explanation to her, she provided responses to questions posed to her that indicated she was able to be fair and impartial if chosen to serve on the jury. *Id.* at 72-81. Ms. Arbaney stated that she had not formed an opinion as to Applicant's guilt, that she could set aside what she had read about the accident, that she had not discussed the case with other individuals, that she did not know any of the circumstances of the accident, and that she could set aside her opinion about drinking to apply the law. *Id.*

Even though Applicant utilized one of his peremptory challenges and Ms. Arbaney did not serve as a juror, I find fair support in the record of the state court's finding that she would be impartial. I further find no manifest error that would merit overturning the state court's ruling of impartiality.

Therefore, the Colorado Court of Appeals' decision regarding Applicant's challenge for cause of juror Arbaney is not contrary to or an unreasonable application of clearly established federal law. The state court's rejection of Applicant's challenge for cause claim with respect to Ms. Arbaney also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented

48

in the state trial court proceeding.

11. Juror Harrington

Applicant asserts that juror Harrington states that she had read about the case in the local newspapers, that she recalled alcohol was involved, and that Applicant was supposed to report back to the courts for some reason.  (Brief Supporting Application at 15.)

Upon review of the transcript, I find Ms. Harrington stated that she always takes with a grain of salt what she reads in newspapers and magazines because she recognized the media as being very biased.  *Deskins*, No. 92CR135, Transcript, 489 (Vol. No. VI, Colo. App. No. 02CA1755).  Ms. Harrington also stated that she had not formed an opinion as to Applicant's guilt or the facts of the case, that she had no emotional reaction to the newspaper articles she read about the case, and that she could be fair and decide the case only on the evidence that was presented. *Id.* at 489-95.

The trial court determined that a challenge for cause lacked merit because based on Ms. Harrington's answers to the questions she appeared to have an open mind, she was prepared to reserve judgment, and she had a healthy disbelief of the things she remembered from the newspaper coverage.  *Id.* at 496.  I find fair support in the record of the state court's ruling that Ms. Harrington would be impartial.  I further find no manifest error that would merit overturning the state court's ruling of impartiality.

Therefore, the Colorado Court of Appeals' decision regarding Applicant's challenge for cause of juror Harrington is not contrary to or an unreasonable

49

application of clearly established federal law.  The state court's rejection of Applicant's challenge for cause claim with respect to Ms. Harrington also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state trial court proceeding.

There is nothing in the voir dire of each of the above jurors that indicates a juror showed actual or presumed prejudice or bias and that would require the trial court to grant a challenge for cause.  *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1467-68 (10th Cir. 1994).  Applicant fails to set forth clear and convincing evidence, as required under 28 U.S.C. § 2254(e)(1), that any of the above-referenced jurors were partial and biased.  I conclude that the voir dire testimony and the record of publicity do not reveal the kind of "wave of public passion" that would have made a fair trial unlikely by the jury that was empaneled as a whole.  I also conclude that the testimony of the above-referenced jurors who either served or were prospective jurors and who Applicant challenged for cause is insufficient to overcome the presumption of correctness owed to the trial court's findings.

The Colorado Court of Appeals' decision regarding Applicant's challenge for cause is not contrary to or an unreasonable application of clearly established federal law.  The state court's rejection of Applicant's challenge for cause claim also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state trial court proceeding.  Therefore, Applicant's challenge for cause claim lacks merit and will be dismissed.

C.  Ineffective Assistance of Counsel

It was clearly established when Mr. Deskins was convicted that a defendant has a right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that counsel was ineffective, Mr. Deskins must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687-88. "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689. There is a "strong presumption" that counsel's performance falls within "the wide range of reasonable professional assistance."  *Id.*  It is the defendant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *Id.*  Under the prejudice prong, Mr. Deskins must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  If Mr. Deskins fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed.  *Id.* at 697.  Finally, ineffective assistance of counsel claims are mixed questions of law and fact.  *Id.* at 698.

1.  Trial Counsel

a.  Arrest and Blood Test

As stated above, I find that Applicant's ineffective assistance of trial counsel claim with respect to Applicant's arrest and blood tests is procedurally barred. Therefore, the claim will be dismissed.

b.  Sequestration of Witnesses

51

With respect to Applicant's ineffective assistance of trial counsel claim as it

pertains to sequestering of witnesses, he asserts that the prosecution called seven

witnesses before trial counsel invoked the rule to sequester witnesses.  (Brief

Supporting Application at 20.)  Mr. Deskins further asserts that two or three of the

witnesses were in the courtroom during the opening arguments and during other

witness testimony.  (Brief Supporting Application at 20.)  Applicant also states that

according to the transcript the first witness was an officer who was at the accident

scene and that both sides delivered openings that clearly described the facts of the

case and stated to what the upcoming witnesses would be testifying.  (Brief Supporting

Application at 20.)

In response to Applicant's sequestration claim, Respondents assert that Mr.

Deskins fails to show any prejudice whatsoever from trial counsel's failure to request

sequestration until after seven witnesses had been called by the prosecution.  (Answer

at 26.)

In addressing Applicant's sequestration claim, the Colorado Court of Appeals

found that:

> CRE 615 provides, "At the request of a party the court
> shall order witnesses excluded so that they cannot hear the
> testimony of other witnesses, and it may make the order of
> its own motion."  The policy behind CRE 615 is to prevent
> witnesses from conforming their testimony to that of other
> witnesses and to discourage fabrication and collusion.  *See
> Martin v. Porak*, 638 P.2d 853 (Colo. App. 1981).
>
> We need not decide whether defense counsel's delayed
> invocation of the sequestration order amounted to
> constitutionally deficient assistance because defendant fails

to demonstrate how a sequestration order entered before any witnesses testified would have affected the outcome of his trial. *See Davis*, *supra*, 871 P.2d at 779. Merely asserting error is insufficient to show prejudice under *Stickland*. *See People v. Garcia*, 815 P.2d 937 (Colo. 1991) (in resolving an ineffective assistance claim, a court is not required first to determine whether counsel's performance was constitutionally deficient; if the defendant fails to demonstrate prejudice the court may resolve the claim on that basis alone.)

Defendant made no showing that any witness testified differently after hearing other witnesses testify or conformed his or her testimony to that of the witnesses who testified prior to the witness sequestration order. Further, defense counsel testified he had only seen witnesses in the courtroom when they were testifying and did not notice a change in any witness's testimony that might have resulted from hearing testimony before the sequestration order was made.

Accordingly, we reject defendant's claim because he has failed to sustain his burden to demonstrate prejudice. *See Armstrong v. State*, 862 So.2d 705, 712 (Fla. 2003) (denying postconviction relief because defendant "made the mere conclusory allegation that prejudice resulted from the witnesses' opportunity to listen to each other's testimony without any degree of specificity as to what facts were testified to prior to invocation of the rule and without any allegation that certain witnesses' testimonies differed, after hearing other witnesses testify, from their prior statements or depositions").

*People v. Deskins*, No. 02-CA-1755, 8-9 (Colo. App. Apr. 8, 2004).

Although Applicant states in the instant action why a sequestration order is

requested, including that it prevents a witness from conforming his or her testimony to

that of another witness and discourages fabrication and collusion, he fails to assert how

he was prejudiced by trial counsel's failure to request an exclusion of witnesses prior to

the time that he did.  Applicant does not assert how allowing two to three witnesses

hear both opening arguments and the first witness, an officer who was at the scene of

the accident, prejudiced his case.

The state court's determination that Mr. Deskins failed to demonstrate any

prejudice from counsel's failure to seek exclusion of witnesses earlier in the trial

proceeding is not contrary to or an unreasonable application of *Strickland*.  Therefore,

the ineffective assistance of counsel claim as it pertains to the sequestration of

witnesses lacks merit and will be dismissed.

c.  Expert Witnesses

Applicant asserts that trial counsel failed to utilize the assistance of expert

witnesses at trial.  (Brief Supporting Application at 18.)  He further asserts that expert

witnesses would have explained the complicated scientific and physical evidence

needed in describing accident reconstruction and the effects of alcohol and drugs on

the human body.  (Brief Supporting Application at 18.)  Mr. Deskins also contends that

the testimony at trial was unclear as to the actual sequence of events of the accident

and the level of his sobriety or intoxication.  (Brief Supporting Application at 19.)  He

further contends that experts were necessary to show to the jury that he did not cause

the accident either by his driving or by his drinking.  (Brief Supporting Application at

19.)

Mr. Deskins claims that his defense throughout the trial should have been that

the accident was caused by the other vehicle being in his lane, that he tried to avoid

the accident by cutting to the right of the oncoming vehicle, and that trial counsel

should have elicited whether the driver of the other car had been drinking and whether

she had her left turn signal on. (Brief Supporting Application at 19.) Mr. Deskins

concludes that trial counsel believed the left turn signal issue was a red herring and

that use of expert witnesses would not help to minimize Mr. Deskins' intoxication and

maximize the other driver's fault. (Brief Supporting Application at 19.)

In the Answer, Respondents argue that the state court of appeals' finding that

trial counsel's strategic decision to not use expert witnesses is a reasonable strategic

decision and is supported by the record. (Answer at 26.) Respondents also argue that

Applicant made no showing that there was an actual witness whose testimony would

have actually helped his defense, and since he did not do that, his claim fails. (Answer

at 26.)

In addressing Applicant's expert witness claim, the Colorado Court of Appeals

found that:

> Defendant contends that defense counsel's failure to hire
> an expert witness to address the effect of drugs and alcohol
> on the human body and an expert to testify on accident
> reconstruction amounted to ineffective assistance of
> counsel. We disagree.
>
> Whether to call a particular witness is a tactical decision
> within the discretion of trial counsel. *Davis*, *supra*; *People v.
> Bradley*, 25 P.3d 1271 (Colo. App. 2001). An attorney's
> "strategic choices made after thorough investigation of law
> and facts relevant to plausible options are virtually
> unchallengeable." *Strickland*, *supra*, 466 U.S. at 690, 104
> S. Ct. at 2066; *Davis*, *supra*, 871 P.2d at 773; *see Ardolino*,
> *supra*. "Mere disagreement as to trial strategy, however, will
> not support a claim of ineffectiveness." *Davis*, *supra*, 871
> P.2d at 773.

Because a challenged action might be considered sound trial strategy under the circumstances of a particular case, judicial scrutiny of counsel's performance must be highly deferential, evaluate particular acts and omissions from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

*Ardolino*, *supra*, 69 P.3d at 76 (quoting *Strickland*, *supra*, 466 U.S. at 698, 104 S. Ct. at 2052).

The tactical decision not to call an expert witness is within the discretion of trial counsel, *see Bradley*, *supra*, 25 P.3d at 1276, and it is not ineffective assistance of counsel when defense counsel conducts a diligent inquiry on the issue and pursues that avenue of defense at trial. *See People v. Stroup*, 624 P.2d 913 (Colo. App. 1980), *rev'd on other grounds*, 656 P.2d 680 (Colo. 1982); *see Smith v. Angelone*, 111 F.3d 1126, 1132 (4th Cir. 1997) (court rejected a claim of ineffective assistance of counsel due to the failure to hire experts because trial counsel reasonably chose to rely upon cross examination of the state's witnesses to establish his case). *But see People v. Danley*, 758 P.2d 686 (Colo. App. 1988) (counsel's failure to investigate the availability of expert testimony combined with his failure to discuss with defendant the necessity for obtaining the same, constitutes ineffective assistance).

Here, defense counsel testified at the Crim. P. 35(c) hearing that his decision was strategic and based upon his concern that expert witnesses, if called, would develop incriminating evidence. He explained that had he hired expert witnesses, the prosecution would have been notified of his theory of defense and may have disproved it.

Concerning his decision not to retain an expert witness on accident reconstruction, defense counsel intended to rely on the prosecution's experts to raise reasonable doubt. Specifically, defense counsel relied on C.B.I. reports that indicated the victim's turn signal could not conclusively be determined to be on or off at the time of the accident. From

that equivocal information, counsel formulated the defense that the victim was partly at fault for the accident.  He argued that the victim took a left turn in front of defendant and that defendant swerved in an attempt to avoid an accident.  This defense was strengthened by the ambiguity of the C.B.I. investigation reports.  According to defense counsel, "I think an expert on that point probably would have caused me more problems than help, because that was somewhat of a red herring, but it was all we had at that point."

Regarding counsel's decision not to hire an expert on the effect of drugs and alcohol on the human body, he explained that a detailed review of the drug and alcohol tests demonstrated the tests were proper.  The first test showed a higher level of blood alcohol than the second, which was expected if the test was accurate.

Defense counsel determined he did not need an expert witness to support his defense based on the "absorption curve."  Counsel summed up the defense, stating:

> There is an absorption curve, and when you consume alcohol quickly and in some quantity, for the first period of time when you are sober, even though your stomach has the alcohol, it has not yet made you intoxicated by reaching the blood stream.  My argument in this case, which duck-tailed [sic] with the evidence, was that . . . [defendant] was drinking at the Silt Bar, he was consuming alcohol; he left and got in the car and started driving.  The accident occurred within five minutes.  My argument was, based on the testing of the People and evidence of people at that bar that . . . [defendant] was not eating very much, was that at the time of the accident his blood alcohol level was under 10; he was not intoxicated.  It peaked out after the accident, when he was given the first test at 013, and the second test it was dropping down to point, I believe, 015.

Defense counsel explained, "[A]n expert would not have

aided me in that, and that's why my trial tactics were not to request an expert." He testified that he consulted with another highly experienced public defender in preparing for defendant's trial and formulating the defense.

We conclude defense counsel's decision not to utilize expert witnesses was strategic and supported by reasonable professional judgment. Accordingly, because defendant has failed to establish this component of the *Strickland* test, we need not address the issue of prejudice. *See Davis*, *supra*.

*People v. Deskins*, No. 02-CA-1755, 4-7 (Colo. App. Apr. 8, 2004).

I find that the state court's determination that Mr. Deskins failed to establish that trial counsel's decision to not utilize the assistance of expert witnesses at trial is not contrary to or an unreasonable application of *Strickland*. Mr. Deskins fails to meet his burden to overcome the presumption that trial counsel's performance fell within the range of reasonable professional assistance by showing that the alleged errors were not sound strategy under the circumstances.

Applicant only speculates about an expert witness's testimony. He fails to state what an expert witness would have stated that would have provided to the juror the complicated scientific and physical evidence which he claims was needed in presenting accident reconstruction and in describing the effects of alcohol and drugs on the human body. He also fails to state how such a presentation by an expert witness would have helped his defense other than to state in a conclusory fashion that experts were necessary to show the jury that he did not cause the accident by either his driving or his drinking. Therefore, the ineffective assistance of counsel claim pertaining to expert witnesses lacks merit and will be dismissed.

2. Appellate Counsel

Mr. Deskins asserts that the appellate public defender failed to appear and argue his appeal bond motion.  (Brief Supporting Application at 18.)  Applicant further asserts that trial counsel appeared in place of appellate counsel, that he offered no arguments on behalf of Applicant, and that he only had thirty minutes to prepare.  (Brief Supporting Application at 18.)  Mr. Deskins contends that the motion was denied, and he did not receive bail even though the state court of appeals had ordered a remand and retrial.  (Brief Supporting Application at 18.)

In the Answer, Respondents argue that Applicant fails to demonstrate that he suffered any harm simply because his appellate counsel did not argue his appeal bond motion and his trial counsel did.  (Answer at 27.)  Respondents further argue that Applicant does not assert how appellate counsel would have done a better job than trial counsel would have done.  (Answer at 27.)  Respondents also argue, citing to *People v. Stewart*, 26 P.3d 17, 27 (Colo. App. 2000), *aff'd in part and rev'd in part on other grounds*, 55 P.3d 107 (Colo. 2002), that the "granting or denial of an appeal bond has no impact or bearing upon the underlying conviction or related issues pending on appeal."  (Answer at 27.)

In addressing Applicant's appellate counsel claim, the Colorado Court of Appeals found that:

> Next, defendant contends counsel for his direct appeal was ineffective because, while appellate counsel filed a motion for an appeal bond, his trial counsel argued the motion.  We are not persuaded.

59

> Defendant alleges in a conclusory fashion that this resulted in prejudice, but does not explain how his direct appeal counsel would have done a better job than his trial counsel in arguing at his bond hearing.  For this reason, we conclude he has failed to sustain his burden of setting forth concrete allegations of actual prejudice.

*People v. Deskins*, No. 02-CA-1755, 9-10 (Colo. App. Apr. 8, 2004).

Although I find that the state court's determination that Mr. Deskins failed to demonstrate any prejudice in trial counsel arguing his motion for an appeal bond is not contrary to or an unreasonable application of *Strickland*, I also find that the claim does not address the validity of his conviction or sentence and, therefore, fails to address a claim that is properly brought pursuant to § 2254.  Accordingly, the claim lacks merit and will be dismissed.

D.  Challenge of Prior Convictions

Applicant asserts that his due process rights were violated when the trial court denied him the ability to challenge his prior convictions, found that his challenges to his prior convictions were time-barred, and that he failed to show excusable and justifiable excuse for allowing a challenge to the prior convictions.  (Application at 6A.)  Mr. Deskins argues that he was not living in Colorado prior to 1989 when the time bar under Color. Rev. Stat. § 16-5-402 was not in effect.  (Application at 6A.)  He contends that he had no reason to attack his prior convictions because he did not know that the prior convictions were unconstitutional, and he had not been charged as a habitual criminal before.  (Application at 6A.)

In the Answer, Respondents assert that the only prior conviction Applicant

challenged in his remand to the trial court was his 1960 Kansas conviction.  (Answer at

28.)  Respondents further argue that the three-year limitation period under Colo. Rev.

Stat. § 16-5-402 is constitutional and properly barred Applicant's attacks on his prior

convictions.  (Answer at 27.)  Respondents also contend that pursuant to *Lackawanna*

*County Dist. Attorney v. Coss*, 532 U.S. 394, 396-97 (2001), Applicant may not

challenge a current sentence on the ground that it was enhanced based on an

allegedly unconstitutional prior conviction for which the petitioner no longer is in

custody.  (Answer at 28.)  Respondents further contend that once a state conviction no

longer is open to direct or collateral attack in its own right because a defendant failed to

pursue remedies that were available to him the conviction may be regarded as

conclusively valid.  (Answer at 28.)  Respondents conclude that Mr. Deskins' attempt to

attack the validity of his prior convictions in the instant habeas is not cognizable.

(Answer at 28.)

    In addressing Applicant's prior conviction claim, the Colorado Court of Appeals

found that:

> [D]efendant, Gerald Edward Deskins, appeals the trial
> court's order, entered on remand, finding he had failed to
> demonstrate justifiable excuse or excusable neglect and
> was, therefore, time-barred from collaterally attacking his
> 1960 Kansas conviction.  We affirm. . . .
>
>     On remand to the trial court, defendant abandoned all
> collateral attacks except the one concerning his 1960
> Kansas conviction.
>
>     After a hearing, the trial court found that, during the many
> years since that conviction, defendant had become
> knowledgeable about the law and had been represented by

attorneys in several other criminal proceedings.  The trial court further found that defendant had had a reason to challenge the validity of the Kansas conviction in those criminal proceedings in order to prevent its consideration at sentencing.  Accordingly, the court ruled, because he had failed to show justifiable excuse or excusable neglect, his challenge was time-barred by § 16-5-402(1), C.R.S. 1999.  This appeal followed.

Section 16-5-402(1), as applicable here, provides that a defendant may collaterally attack a prior conviction within three years of its entry.  In order to avoid constitutional infirmities, the supreme court, in *People v. Fagerholm*, 768 P.2d 689 (Colo. 1989), construed § 16-5-402, C.R.S. 1999, to include a grace period of five years from the effective date of the statute within which convictions could be challenged without regard to the statutory exceptions.  Thus, persons who had sustained convictions before the effective date of the statute were given until July 1, 1989, to attack their convictions.

Here, defendant's motion was filed after the five-year grace period had expired.  Therefore, it was his burden to establish excusable neglect or justifiable excuse in order to avoid application of the time-bar.  *See* § 16-5-402(2)(d), C.R.S. 1999.

Whether a defendant has demonstrated justifiable excuse or excusable neglect is a question of fact to be resolved by the trial court.  Deference is to be given to the trial court's findings of fact, and, when there is record support for them, a reviewing court will not overturn those findings.  *People v. Vigil*, 955 P.2d 589 (Colo. App. 1997).

Factors a trial court should consider in making that determination include the existence of any impediments preventing a challenge to a prior conviction, whether the defendant had a previous need to make a challenge, whether the defendant knew that a prior conviction was constitutionally infirm or had reason to question its validity, whether there existed other means to prevent use of the conviction, and the effect that the passage of time has had on the prosecution's ability to defend against the challenge.

*People v. Wiedemer*, *supra*.

Defendant argues the three-year limitations period of §
16-5-402 did not begin to run against him until he moved to
Colorado in September 1989 and that it did not expire until
August 1992, the month he was charged in this case.
Building upon this premise, defendant asserts his collateral
attack filed in November 1992 should be deemed timely
because it "related back" to the date he was first charged in
this case.  We are not persuaded.

Defendant bases these arguments, in part, on due
process and equal protection grounds.  However, he did not
raise these constitutional claims in the trial court and we
therefore decline to address them.  *People v. Cagle*, 751
P.2d 614 (Colo. 1988), *appeal dismissed*, 486 U.S. 1028,
108 S. Ct. 2009, 100 L. Ed. 2d 597 (1988).

The General Assembly specifically included out-of-state
convictions within the limitations statute.  Section 16-5-
402(1) provides: "no person who has been convicted under
a criminal statute of this or any other state of the United
States shall collaterally attack the validity of that conviction
unless such conviction is commenced within the applicable
time period . . . ."  (emphasis added).  The limitations statute
contains no tolling provision for out-of-state residents who
fail to timely challenge out-of-state convictions.  Nor does it
indicate that a collateral attack "relates back" to the date
that new charges are first filed.  We decline defendant's
invitation to engraft such provisions.

The trial court applied the *Wiedemer* factors and
specifically found that defendant had an incentive to attack
the 1960 Kansas conviction in order to prevent its
consideration in his other sentencing proceedings which had
occurred before 1989.  This finding is supported by the
record and defendant offers no explanation for his failure to
raise such a challenge in those earlier proceedings.
Accordingly, we uphold the trial court's finding that
defendant failed to demonstrate justifiable excuse or
excusable neglect and is therefore time-barred from
collaterally attacking his 1960 Kansas conviction.

*People v. Deskins*, No. 98-CA-1804, 1-5 (Colo. App. Mar. 2, 2000)

In *Lackawanna*, the Supreme Court held that:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Id.* at 403-04 (citation omitted). There is at least one narrow exception to the general rule in *Lackawanna*. This exception applies when there was a failure to appoint counsel in the prior proceeding in violation of the Sixth Amendment. *See id.* at 404. This exception is not applicable in the instant action because Applicant does not contend that counsel was not appointed in the 1960 Kansas case.

A second exception to the general rule in *Lackawanna* may apply when a defendant cannot "be faulted for failing to obtain timely review of a constitutional claim." *Id.* at 405. Examples of such cases include when "a state court [has], without justification, refuse[d] to rule on a constitutional claim that has been properly presented to it" or when, "after the time for direct or collateral review has expired, a defendant [obtains] compelling evidence that he is actually innocent of the crime for which he was convicted, and which he could not have uncovered in a timely manner." *Id.* at 405. Applicant does not allege that the state courts have refused to rule on a properly presented constitutional claim or that he has new compelling evidence of actual innocence.

Mr. Deskins simply asserts that he did not live in Colorado prior to 1989 and that the time bar under Color. Rev. Stat. § 16-5-402 did not begin to run until after he had moved here. He further asserts that he had no reason to attack his prior convictions because he did not know that the prior convictions were unconstitutional, and he had not been charged as a habitual criminal prior to the instant case. Neither reason asserted by Applicant meets either of the exceptions described above. Furthermore, to the extent Applicant is attempting to claim ignorance of the law, even for a *pro se* applicant, ignorance generally does not excuse prompt filing. *Marsh v. Soares*, 223 F. 3d 1217, 1220 (10th Cir. 2000).

Therefore, I find that Mr. Deskins may not challenge the 1960 Kansas conviction in this action. The state court's decision regarding Applicant's prior conviction claim was not contrary to or an unreasonable application of any clearly established rule of federal law and the decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state trial court proceeding. Applicant's prior conviction claim will be dismissed on the merits.

E. Conviction for Reckless Child Abuse

Applicant asserts that because he was convicted under Colo. Rev. Stat. § 18-6-401(7)(a)(I) with three counts of reckless child abuse resulting in death while he also was convicted of three counts of vehicular homicide for the death of three children under Colo. Rev. Stat. § 18-3-106 he has been convicted twice for the same three deaths. (Application at 6A.) Mr. Deskins further asserts that the proscriptions of § 18-6-401 are intended to encompass conduct that is particularly abusive to children.

65

(Application at 6A.)  He contends that his actions are not the type that would be

charged under § 18-6-401 because he had no intent to or knowledge that he would be

involved in an accident involving children.  (Application at 6A.)

In the Answer, Respondents argue that both the Colorado Court of Appeals and

the Colorado Supreme Court rejected Applicant's claim that § 18-6-401 did not intend

to include acts where there was no evidence that a defendant did not know that his

conduct could result in injury to children.  (Answer at 29.)  Respondents further assert

that with respect to Applicant's double jeopardy claim the claim is unexhausted and

procedurally barred because Applicant failed to raise this claim in state court.  (Answer

at 30.)

> 1.  Colo. Rev. Stat.  § 18-6-401

In addressing Applicant's state statutory construction claim, the Colorado

Court of Appeals found that:

> We have long recognized that the General Assembly is
> entitled to provide for more severe penalties for different
> crimes, so long as the classification of crimes reflects
> substantial differences in the proscribed conduct which have
> a reasonable relationship to the public purpose sought to be
> achieved.  Otherwise, the statute may violate the
> constitutional principle of equal protection.  *People v.
> Montoya,* 196 Colo. 111, 113, 582 P.2d 673, 675 (1978).
> Both *Taggart* and *Christian* concerned this type of equal
> protection challenge to the child abuse statute.
>
> In *Taggart,* the defendant was charged with and
> convicted of child abuse resulting in serious bodily injury.
> *Taggart,* 621 P.2d at 1379.  The defendant in *Taggart*
> argued that the child abuse statute violated equal protection
> because it proscribed the same conduct forbidden by the
> criminally negligent homicide statute but carried a

disproportionately greater penalty.  *Id.* at 1381.  We rejected this argument and held in *Taggart* that the child abuse statute and the criminally negligent homicide statute did not proscribe identical conduct.  Unlike the general terms of criminally negligent homicide, we pointed out that "the proscriptions of the child abuse statute encompass conduct that is particularly abusive to children, that is directed specifically at a child, and that results in injury to that child." *Id.* at 1382.  In other words, the crimes were distinct for equal protection purposes because the proscriptions of the child abuse statute were directed specifically to children.

The other case cited by the defendant, *People v. Christian,* 632 P.2d 1031 (Colo.1981), is very similar.  In *Christian,* the defendant was charged with and convicted of both child abuse and reckless manslaughter. *Christian,* 632 P.2d at 1033.  Again, the defendant argued that application of the child abuse statute violated equal protection because it resulted in a higher penalty for the same conduct.  *Id.* at 1035.  For the purposes of equal protection, we held that "there are significant differences between the legislative proscription of specifically defined acts of child abuse resulting in serious injury . . . and the general proscription of reckless conduct resulting in death to anyone, adult or child . . . ." *Id.* at 1036.

Deskins argues that the equal protection discussions in *Taggart* and *Christian* actually require a previously unrecognized or unacknowledged "knowing" or "awareness" mens rea requirement for reckless child abuse.  In our view, neither *Taggart* nor *Christian* requires that the actor be aware that the specific person injured was a child and not an adult.  In these cases, the court was simply concerned with whether the requirements of the statutes satisfied equal protection.  We concluded that equal protection was satisfied because, unlike the more general statutes, the child abuse statute required conduct affecting children.  Therefore, the holding of the court of appeals in this case is not in conflict with our decisions in *Taggart* and *Christian.*

As part of his argument, Deskins contends that the standard for a reckless act requires that the actor be conscious of the risk involved.  According to Deskins, a

conscious disregard of the risk involved in this case requires the actor's awareness of the presence of children.  We agree that the plain language of the statutory definition of recklessness requires that the actor *consciously* disregard a substantial and unjustifiable risk.  § 18-1-501(8), 8B C.R.S. (1986).  We also agree that conscious disregard necessitates an awareness of what the risks are.  However, the awareness required for reckless child abuse is simply the *risk* that one's conduct could result in an injury to a child's life or health.  § 18-6-401(1), 8B C.R.S. (1996 Supp.).  Therefore, the risk in this case was not that children might be in the actual car that Deskins' vehicle hit that night.  On the contrary, what Deskins consciously disregarded when he drove while drunk was the risk that children would be passengers *in any of the cars on the road that night.*  In our view, the record was sufficient for the jury to conclude that Deskins disregarded this risk and that the risk was substantial and unjustifiable.

The defendant essentially contends that he should be relieved of criminal liability because he was not "aware" of the age of his victims.  A similar argument has been rejected in cases involving abuse of the elderly.  In *People v. Suazo,* 867 P.2d 161 (Colo. App. 1993), the defendant was charged with assault of the elderly. The applicable statute defined the elderly as being over 60 years old. The defendant argued in *Suazo* that at the time of the assault he was not aware that the victim was over 60 years old and therefore should not be held criminally liable.  *Suazo,* 867 P.2d at 169.  The court of appeals held in *Suazo* that actual knowledge or awareness that his victim was over sixty years of age was not required.  *Id.* at 170. *See also People v. Davis,* No. 94CA1132, 935 P.2d 79, ---- - ---- (Colo. App. July 11, 1996) (applying rationale of *Suazo* to robbery of an "at-risk-adult").  The court of appeals reasoned that when the victim's age is a part of the offense, "the General Assembly has the prerogative to determine if a reasonable mistake of age shall be a defense to the crime . . . ." *Id.*

We find the rationale of the *Suazo* decision equally applicable here.  In this case, the language of the statute requires that Deskins disregard a substantial and unjustifiable risk that his conduct may cause death or injury to a child.  The legislature has indicated that the victim's age is part of the offense of child abuse by defining a child as a

person under sixteen years old.  § 18-6-401(2), 8B C.R.S.
(1986).  As in *Suazo,* the General Assembly had the
prerogative to determine if a mistake of age defense was
appropriate and did not do so.  Therefore, we hold that the

standard for reckless child abuse does not require the
actor's awareness that the victim was a child.

*People v. Deskins*, 927 P.2d 368, 372-73 (Colo. 1996).

"[T]he [state] courts' interpretation of the state . . . statute is a matter of state law

binding on this court.*" Chapman v. Tim LeMaster*, 302 F.3d 1189, 1196 (10th Cir.

2002); *see also Missouri v. Hunter,* 459 U.S. 359, 368 (1983) ("We are bound to accept

the [state] court's construction of that State's statutes.") (citing *O'Brien v. Skinner,* 414

U.S. 524, 531 (1974)); *Hatch v. Oklahoma*, 58 F.3d 1447, 1464 n.11 (10th Cir. 1995)

("Even if petitioner were to challenge this construction of [the statute] directly, we would

have to defer to the Oklahoma court's construction of a state statute.") (citations

omitted).  "In assessing whether a state legislature intended to prescribe cumulative

punishments for a single, criminal incident, we are bound by a state court's

determination of the legislature's intent." *Birr v. Shillinger,* 894 F.2d 1160, 1161 (10th

Cir. 1990).

Based on the findings by the Colorado Supreme Court regarding the

construction of § 18-6-401, I find that Applicant's claim of insufficient evidence to

support the child abuse conviction is without merit.  The Colorado Supreme Court, with

great detail, examined § 18-6-401 and found that standard for reckless child abuse

does not require the actor's awareness that the victim was a child.  The Colorado

Supreme Court's interpretation of § 18-6-401 is binding on this Court.  Therefore,

Applicant's state statutory construction claim will be dismissed.

      2.  Double Jeopardy

With respect to Mr. Deskins' double jeopardy claim, I fail to find in the record that Applicant presented this claim to the state courts.  The only basis Mr. Deskins provides for his double jeopardy claim is that he was convicted of three counts of vehicular homicide for the death of three children and also charged with child abuse involving the death of same three victims, which he is claiming are prescribed cumulative punishments for a single, criminal incident.  Even if Mr. Deskins had raised a double jeopardy claim in state court, dismissal of the child abuse convictions is of no consequence.  Mr. Deskins has been convicted of three counts of vehicular homicide and habitual offender counts resulting in five consecutive life sentences.  The child abuse convictions and the vehicular homicide convictions are concurrent sentences. Nonetheless, I will dismiss the double jeopardy claim as unexhausted and as procedurally barred.

V.  MOTION TO SUBMIT NEWLY DISCOVERED EVIDENCE

Finally, I address Applicant's Motion to Submit Newly Discovered Evidence, filed April 24, 2007.  In the motion, Applicant purports to submit "new evidence" that he recently discovered, that was not presented during trial.  Applicant contends that this new evidence would support suppression of results of blood test.  However, a review of the state court record reveals that Applicant did not exhaust his "new evidence" claims in the state court.  As discussed above, a state prisoner bringing a federal habeas corpus action bears the burden of showing the he has exhausted all available state

70

remedies. *Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992). Therefore, the

motion to submit newly discovered evidence will be denied.

IV.  CONCLUSION

Based on the above findings, Applicant's claims either lack merit or are

procedurally barred.  Therefore, the Application will be denied.  Accordingly, it is

ORDERED that the Application is **DENIED** and the action is **DISMISSED WITH**

**PREJUDICE**.  It is

FURTHER ORDERED that all claims, except for the ineffective assistance of

counsel claim, regarding Applicant's arrest and use of contaminated blood, and the

double jeopardy claim, are dismissed on the merits.  It is

FURTHER ORDERED that Applicant's ineffective assistance of counsel claim,

regarding Applicant's arrest and use of contaminated blood, and the double jeopardy

claim are dismissed as procedurally barred.  It is

FURTHER ORDERED that Applicant's Motion to Submit Newly Discovered

Evidence, filed April 24, 2007, is **DENIED**.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's

fees.

Dated:  June 11, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge